## COLON v. UNITED STATES.

District Court, S. D. New York.

July 23, 1947.

William L. Standard, of New York City (Ruth H. Saslow, of New York City, of counsel), for libelant.

John F. X. McGohey, U. S. Atty., of New York City (C. B. Dunham and Maurice J. Smith, both of New York City, of counsel), for respondent.

KNOX, District Judge.

Libelant here sues the United States on three alleged causes of action. In the first of these, he asserts that, while employed as a wiper on respondent's merchant vessel, the Jefferson Davis, the chief engineer committed a physical assault upon him. For the injuries thus inflicted, libelant asks that he be awarded damages in the sum of $15,000. The second alleged cause of action is designed to recover $5,000 for Colon's maintenance and cure. The third asks for wages amounting to $187.50, which are said to have been wrongfully withheld from libelant.

Respondent filed a general denial of the allegations of the aforesaid causes of action. By way of further defense to the third cause of action, respondent asserts that on or about December 27, 1942, when the Jefferson Davis sailed from Capetown, South Africa, libelant had failed to report on board, and was left on shore. Shortly thereafter, libelant was furnished with transportation as a workaway from Capetown, to a Persian Gulf port on board the Caesar Rodney, also owned by the United States. At this latter port, Colon rejoined the Jefferson Davis on January 27, 1943. He asks that he be paid wages for the intervening period.

Libelant signed on the Jefferson Davis at New York, on November 4, 1942. His base wage was $87.50 per month. As the ship proceeded on her voyage and stopped from time to time at intermediate ports, Colon was accustomed to draw a portion of his pay, and go ashore. On these occasions, it is said that he sometimes became intoxicated. Colon denies that he was ever drunk while on duty.

The events leading up to this litigation are these: On the morning of December 26, 1942, libelant's vessel awaited convoy orders as she lay at her dock at Capetown, ready for sea. At 5 o'clock p. m., libelant drew some of his pay, and had a fellow-seaman secure a pass which enabled him (Colon) to go ashore. He made no inquiry as to the time at which he should return to the ship. Furthermore, for security reasons, the time of the vessel's expected departure was not posted on her bulletin board. The Master's testimony is to the effect that the Chief Officer and the Chief Engineer, acting through the union delegate, had given notice to the men employed in their respective departments that those having shore leave should be on board by midnight. Each such person, excepting Colon, returned to the ship before that hour. He was not scheduled for duty on December 27, 1942, which was a Sunday. He well knew, nevertheless, that he was expected to be on board the boat at her sailing hour. He was also aware that she was fully prepared for sea. Instead of giving complete attention to his obligation to the ship, libelant decided to seek the solace and comfort of a Capetown female. In this quest, he was entirely successful. When he awakened at 6:45 on the morning of December 27, 1942, he found himself in the bed of his companion of the night before. After dressing, he returned to the pier where his ship had been docked, and found her gone. For this absence, he was logged by the Master as having failed to rejoin the vessel.

Libelant got in touch with the agents of respondent, and, as has been indicated, they arranged for him to serve as a workaway on the Caesar Rodney, which was bound for a port at which the Jefferson Davis would touch. Colon worked as a wiper on board the Rodney for about a week. Thereafter, and until the ship reached Basrah, Iraq, on January 27, 1943, he spent eight hours each day in keeping watch over a demented seaman. For these services, libelant received no compensation other than his bed, board and transportation. On the date last mentioned, he rejoined the Jefferson Davis, and on the following day, resumed his ordinary duties.

On the afternoon of March 15, 1943, the Jefferson Davis docked at Calcutta. Colon drew $100, and went ashore. When he reported for duty at about 8:15 o'clock on the morning of the next day, he seems to have been suffering from the effects of indulgence on the previous night.

Colon's version of the events that shortly took place after he entered the engine room is to this effect: The first assistant engineer told him to wash down the ship's

starboard boiler. Libelant thereupon prepared a bucket of soda water, procured a ladder and took a position on it between the starboard boiler and the main steampipes. Starting upon the task assigned, he soon descended to the boiler room floor, and complained that the boiler was too hot to do the work. He says it was carrying about 200 pounds of steam. Colon requested the first assistant engineer to direct the other wiper to give him a hand "to take the bad part out first, and after that I can do all the rest myself." The first assistant replied that he had a special job of shop work for the other wiper.

Colon then resumed work at the boiler and a few minutes thereafter, came down his ladder to cool off at a ventilator. At this time, the Chief Engineer had entered the room and libelant complained to him concerning the heat. Instead of receiving a sympathetic reply, the Chief said he wanted Colon to do "eight hours straight in the boiler," and to "squeegee the boiler before he has trouble. * * *"

Libelant returned to work and continued with his task for about half an hour. Once more, he descended the ladder to return to the ventilator and cool off. He again encountered the Chief Engineer who told him to go back to his job and not to take "fresh air." Colon then said he wished to see "the skipper about working conditions." By way of reply, the Chief retorted: "Go up there; you see the old man. I give you 15 minutes, and in 15 minutes you had better come down here again." Colon went on deck and saw the ship's Captain. The latter, on hearing libelant's complaint, remarked that he had nothing to do with the engine room department. As Colon started to go down below, he saw the purser who requested him to tell George (the other wiper who was at work in the engine room shop) to collect his money. Colon then proceeded to the mess room where he found the ship's union delegate, and said: "It is too hot and the chief engineer doesn't want me to take fresh air." The delegate replied: "No, no, no use for you to work. Take fresh air. Take every half hour or every three-quarter hour."

Libelant then returned to the engine room. On his arrival, he was addressed by the Chief, who asked: "What did the skipper say—pay you off?" The conversation continued: "I said, 'No.' He say, 'What did he say?' I say, 'The skipper say he has nothing to do with engine department,' and the chief engineer laughing, 'Ha, Ha, Ha. I am the skipper of the engine shop. The union has nothing to do with that. The agreement say nothing about fresh air. You had better go up there before I break your neck.'"

Colon again began squeegeeing the boiler. He then remembered that the purser had requested him to tell George to collect his money. Descending the ladder, libelant went to the shaft alley to do so. The first assistant engineer saw him and inquired: "What are you doing in the shaft alley? I say, 'I am telling George to collect money. I want to go ashore.'" The first assistant replied: "That's what I am here for. You ain't supposed to go in there."

Colon went back to his boiler work. When he had done so, the Chief Engineer walked over to libelant and said: "What did I tell you before; Don't go around no place. I want to see you stay eight hours in that boiler."

The following conversation then ensued: "I said, 'Well I have to take fresh air, and I have to go around and the delegate say that' and he says 'Never mind the delegate. * * * I am the delegate. No delegate on board except me.'"

Colon's testimony continued:

"Q. Then what happened? A. I started squeegeeing the boiler, about ten minutes to ten, the fireman-cook came in and he say Chico, fresh coffee. Come and get your fresh coffee. It is too hot. Come and get fresh air.

"Q. What did you do? A. The Chief Engineer come around and he says: 'What do I tell you before? Don't take fresh air, you nigger Porto Rican. * * * You are a Hindu. Come around here and I will give you some fresh air.'

"Q. And then what happened? A. And he take me to the ventilator behind the shaft alley and they stand me up there. * * * He call me nigger Porto Rican; I am like a Hindu. I work like a Hindu. His hand going like that (indicating) and

hit me down here on the jaw (indicating) and knocked me down. * * * I was near a door, I stand up like that (indicating) and he hit me again, and after that he grabbed me by the hair (indicating) 'You have a lot of hair like a Hindu,' and he raise me up by one hand (indicating) and he says: 'Come, I will show you how to squeegee, * * *' and he take me down to the boiler and with the first assistant jump in front of me with a screw driver. * * * We had to pass between the boiler and the fuel pump. There was a couple of valves in there, see, and he (the chief) push me behind there, and I fall on top of the boiler, and I hit my arm and back. * * *"

Colon stated that he was pushed against pipes and valves behind the boiler and that is what burned him. "The burn is not bad, but the two and one-half inch cut from the boiler." He said he got a blister on his arm, shoulder, chest and on his face. Colon further related that the Chief Engineer tried to hit him a couple of times with the shoes (indicating kicks) but he ran away.

Colon, accompanied by a union delegate, saw the Captain and then went to the American Consul to lodge a complaint against the chief engineer. Later in the day, Colon went to the General Hospital in Calcutta, where he remained for parts of two days—5:45 p. m. on March 16 to 4:30 p. m. on March 17, 1943.

The hospital record shows that upon admission to that institution, Colon was suffering from minor injuries over the right forearm and right shoulder. These consisted of abrasions on the dorsum of the right forearm and the right shoulder joint. He complained also of pain on the left mandibular joint and over the right shoulder. Before being discharged from the hospital, libelant received an injection of 1500 units of anti-tetanus serum. Every other day, between March 17 and March 27, 1943, when the ship left Calcutta, he returned to the hospital for the renewal of bandages that covered his abrasions. From time to time on board the vessel, he treated himself by taking pills and using linament. At the end of about one week following his injuries, Colon resumed his regular duties and continued to discharge them until the end of the voyage at New York, on July 3, 1943. The shipping articles reveal that he received the balance of his wages "under protest" for the reason that he was not being compensated for the time he spent on the Caesar Rodney.

The logbook of the Jefferson Davis indicates that libelant's conduct throughout the voyage was good and that his ability was very good.

Two weeks after his discharge, libelant was examined by Dr. David H. Smith, who testified at the trial. Dr. Smith says that he found a superficial three inch scar on Colon's right lumbar region, scars on the left eyebrow and tenderness in the lumbar muscles. Upon a re-examination on November 9, 1945, Dr. Smith found tenderness in Colon's lower back and his right lumbar region. He also found that the forward flexion of libelant's spine was ten percent less than normal. The surgeon concluded his testimony by saying that his patient was suffering from chronic low back sprain and that this had resulted in a permanent disability to the extent already mentioned. Such an injury, the doctor stated, could reasonably have been caused by a push or blow and fall, as asserted by libelant.

After leaving the Jefferson Davis, Colon continued going to sea. On subsequent voyages, however, he worked as a messman instead of a wiper. This was due to the fact, so he says, that the work was lighter, and this was necessitated by reason of the injuries sustained on board the Davis. His wages as a messman were about the same as those of a wiper.

Libelant's story is corroborated by the deposition of George Sayyah, who was also a wiper on board the Jefferson Davis. His testimony, in part, is this: "On March 15, I was ordered to work in the shaft alley, doing some painting around there. Colon was ordered to clean around the boilers. Those orders were given by the first engineer. So, as I worked there for quite some time—I started work at eight o'clock. I was in the shaft alley and I thought about going up for some coffee. * * * After coming out of the shaft alley doorway, as I entered the engine room, why I heard someone cursing loudly, and

he said 'You Spic so and so; you had this coming to you for quite some time.' I hesitated, and I just turned around, and I peeked around the corner and saw the chief engineer about to strike Colon, the chief, and the first engineer was on the other side of Colon. They were under the ventilating shaft. I stood there, and I saw the chief strike Colon and knock him down. As I didn't want to get involved in any dispute between the men, I went back to the shaft alley. I didn't want—I made believe I didn't see anything * * * I went back to the shaft alley and I waited there about ten minutes, and I came out again and the chief and the first were laughing about something and as I came out, they said, 'What happened to your friend * * *' I said, 'Who?' They said, 'Your partner Colon.' I said, 'I don't know. Why? Isn't he working here?' He said, 'I don't know. He is not around.' I said, 'He probably went up for coffee'. * * * I made believe I didn't know anything about it. So I went topside, and I saw Colon in his room and I saw his hair was all tangled up and his back was all burned. * * * Both shoulders and one arm was burned. The skin was black; all bruised up. * * * His jaw was puffed up, the left side of his face * * * I did see the chief engineer strike him * * * on the left side of the face."

The hospital record does not disclose that libelant was either burned or had a face injury.

Sayyah went on to say that some time before the incident just described, the first assistant engineer with whom he was friendly had told him that Colon "is a Porto Rican and that he had caused certain trouble on board the ship. He missed the ship in Capetown due to a drunk he was on, and he said ever since he hated his guts, and he said: 'Don't ever let him try to mislead you in any way. * * * and don't have him try to get you to drink with him and go out with him.' He said 'In fact, don't talk to him. * * * He is like a Negro. Porto Ricans and Negroes are all alike.'"

Sayyah further testified that when the ship was outside Calcutta, he had a talk with the first engineer and that the latter said Colon "fell down against the boiler, and he said the Chief did not strike him. He said Colon is trying to start trouble against the Chief and him. * * * 'If you don't take Colon's part and do your work, I will see that you can have off while we are in port.' * * *" At the time of the assault, Sayyah was about five feet away, according to his testimony.

Following the complaint that Colon made to the American Consul at Calcutta, that official made an investigation into the merits of the alleged episode. In the course of his inquiry, the ship's Master, the chief engineer, together with others of the vessel's officers, were examined, and no action was taken against any of them. Sayyah says that he told Colon he would not appear at the hearing "for the reason I did not want to have the chief and first engineer antagonize me, or threaten me in any way or form on the trip going back to New York, as I feared the chief and the first. * * * I did not want to have anything done to me personally, any bodily harm done to me. * * *"

Morales, a fireman on board the vessel, also testifed for libelant. Morales said, however, that he did not see the alleged assault. His evidence dealt primarily with the nature of Colon's injuries, the heat that prevailed in the boiler room, and libelant was so far as Morales had observed a man of sobriety.

Cecil R. Thelen was the Chief Engineer of the Jefferson Davis. Apparently, he is a competent man and, from his appearance and demeanor on the stand, I had no reason to regard him as either a violent or brutal person. His story was this:

"The first assistant and the two engineer cadets and myself were working on the after end of the main engine, work that had given us trouble all the way around the world, and we were down there * * * to get it corrected and Colon came into the engine room. He was obviously intoxicated from the night before and looking very bad, and we noticed when we put him to work, the first assistant put him to work, we noticed that he would continually leave his work. Well the work is something that has to be done and we put him work-

ing on the boiler that was dead, that was not steaming, and that is the only time you can do the work on it, where it is comfortable. * * * Well, he kept leaving and I told the first to check up on him because I wanted to continue to work on the main engine. He found him at various places and put him back to work but he wouldn't stay. He wanted to get out of there. It wasn't uncomfortable and I went to the boiler and showed him. I told him the boiler was cold. 'You can go ahead and work there. It is not uncomfortable.' So, he was going away to see the delegate and so on. I think he wanted to see the captain to pay off, to leave the ship. So I told him to go ahead and see the captain. I would give him fifteen minutes, or some words to that effect, because I felt it was perfectly all right, if he could get off the ship, that is his business. He came back and said the captain wouldn't pay him off and I said: 'Then you have to go back to work.' "

"So we continued our work on the main engine and after a while we heard this terrible scream from the front of the boiler where Colon was supposed to be working, and we looked around all of us, and we saw him coming out from back of the boiler, and disheveling his hair, mussing it up with his hands like this (indicating), and as he passed the center of the engine room, which was probably 10 or 12 feet from where he was working, we saw him take his undershirt and tear it off and carry on like a person demented. So I said to the first: 'You had better see what is the matter with that fellow. It looks like he is having a fit or something.'

"We went on with our work * * *. So we paid no more attention to him, and we went up at coffee time * * * and we heard in the alley from the different men that Colon was claiming that he had been attacked by me. * * * "

Thelen testified that he never struck the man nor picked him up by the hair. In fact, he did not want to get anywhere near him.

Floyd W. Smith, an engine cadet on the ship, testified that the chief engineer did not go behind the boiler with Colon, and that the latter was not menaced by either the chief or the first assistant engineer. In the judgment of this witness, these officers "were always just fine to their crew. Everybody liked them."

Frank L. Stecher, now a Lieutenant, J. G., U.S.N.R., was also in the engine room on the day of the alleged assault, and his evidence is that there was no altercation between the chief and Colon or any one else. He also said that Colon was in a semi-alcoholic condition.

Such, too, in effect is the testimony of Robert E. Sample, the first assistant engineer.

In the face of this testimony, and notwithstanding the detailed and circumstantial narratives given by both Colon and Sayyah, I am unable to find that the former has shown, by a fair preponderance of evidence, that Thelen assaulted him. When Colon testified before me, he impressed me as an excitable person and as one upon whom too much reliance should not be placed.

Sayyah did not testify in court, and I am, therefore, unable to pass personal judgment with respect to his credence. Standing alone, the record of his evidence is highly impressive. Furthermore, so far as appears, there is no reason why he should perjure himself on behalf of Colon. Nevertheless, doubting the accuracy of libelant's story, as I do, I can not accept Sayyah's evidence as against the testimony of other persons of apparent standing and respectability, as well as responsibility. For this reason, libelant's first and second alleged causes of action will be dismissed.

As respects the remaining count contained in the libel, it is my opinion that it should also be dismissed. Colon was himself to blame for his failure to sail with his ship when it left Capetown. He was properly classified, I think, as a workaway during the time he was on the Caesar Rodney, and for the period of libelant's absence from the Jefferson Davis, he was not entitled to be paid. See The Cripple Creek, D.C., 52 F.Supp. 710; Brink v. Lyons, D. C., 18 F. 605; Buchanan v. United States, D.C., 24 F.2d 528, and the City of Norwich, 2 Cir., 279 F. 687, 695, L.R.A.1918C, 795.

Libel dismissed.